# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THUNDER DIESEL & PERFORMANCE CO.,<br><br>RED DEER EXHAUST, INC.<br>(d/b/a Flo~Pro Performance Exhaust),<br><br>and<br><br>SCHUMACHER ESTATES, LTD.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No.: 3:22-cv-03042<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### UNITED STATES' MEMORANDUM IN SUPPORT OF ITS UNOPPOSED MOTION TO ENTER CONSENT DECREE

The United States of America, on behalf of the Environmental Protection Agency ("EPA"), respectfully requests that this Court enter the proposed Consent Decree previously lodged on July 28, 2022. *See* ECF No. 3-1 (Consent Decree or CD).

Pursuant to 28 C.F.R. § 50.7, notice of lodging of the proposed Consent Decree was published in the Federal Register on August 8, 2022, commencing a 30-day period for submission of public comments. *See* 87 Fed. Reg. 48199 (Aug. 8, 2022). The public comment period has expired, and the United States has not received any comments on the proposed Decree. Defendants have authorized the United States to represent that they do not oppose the granting of this motion or the entry of the Consent Decree. In addition, pursuant to the terms of the Consent Decree, Defendants consent to entry of the Consent Decree

1

without further notice. *See* Consent Decree Section XIX, ¶ 84.

Because it is fair, reasonable, and consistent with the purposes of the applicable laws, the United States now seeks entry of the Consent Decree.

## I. NATURE OF THE CASE

This is a civil environmental enforcement action against Thunder Diesel & Performance Co. ("Thunder Diesel"), Red Deer Exhaust, Inc. ("Flo~Pro"), and Schumacher Estates Ltd. addressing aftermarket products for motor vehicles, and the fraudulent transfer of dividends totaling $2.75 million from Thunder Diesel to Schumacher Estates. The claims in the Complaint arise under Section 203(a)(3)(B) of the Clean Air Act ("CAA") and under the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3304(b)(1)(a).

Thunder Diesel and Flo~Pro ("CAA Defendants") violated Section 203 of the CAA by manufacturing and selling over 200,000 products that bypass, defeat, or render inoperative factory-installed emission control devices or elements of design on EPA-certified motor vehicles. Flo~Pro is a major manufacturer of aftermarket defeat devices that sold its products to wholesale distributors. Thunder Diesel was a wholesale distributor of aftermarket defeat devices—the majority of which are manufactured by Flo~Pro—located in Mountain Home, Arkansas; it has recently shut down.

The aftermarket defeat devices included hardware and software products. The software products are primarily electronic files, known as "tunes," that delete or turn off one or more emission control devices installed on a vehicle by the manufacturer. The hard parts are products that physically block, interfere with, or replace emission control devices. The CAA Defendants represent that they are no longer manufacturing and/or selling aftermarket automotive products or components designed for use. CD at 4.

In February 2019, EPA issued a Finding of Violation to Thunder Diesel alleging violations of Section 203(a)(3)(B). Using the evidence from the Thunder Diesel case, EPA issued a Finding of Violation to Flo~Pro on June 6, 2019. After receiving these Notices, Thunder Diesel fraudulently transferred substantially all of its assets. In March 2019 and August 2020, Thunder Diesel paid a total of $2,750,000 in dividends to Schumacher Estates. Schumacher Estates is the sole shareholder of Flo~Pro and Thunder Diesel. Schumacher Estates is 50 percent owned by In Control Alsask, Inc. and 50 percent owned by 1284896 Alberta Ltd., which are owned entirely by Kim Schumacher and Donald Schumacher, respectively. In other words, Kim and Don Schumacher are equal part owners of Flo~Pro and Thunder Diesel through Schumacher Estates and their individual holding companies. The Complaint alleges that these transfers were fraudulent under the FDCPA, 28 U.S.C. 28 U.S.C. § 3304(b)(1)(a).

## II.   TERMS OF THE SETTLEMENT

The proposed Decree requires the Defendants to pay $1,600,000 as a civil penalty based on Defendants' limited ability to pay; comply with the CAA by following injunctive relief measures tailored to the Defendants' actions and inactive status in the industry; and periodically report on their future involvement in the automotive industry.

### A. Penalty

The parties agreed on a total penalty of $1,600,000 paid in two payments over four months to resolve the CAA and FDCPA claims. The first payment is due 15 days after the Date of Entry of the Consent Decree and the second payment is due January 1, 2023. Defendants will also pay any interest that has accrued starting from the date of lodging. CD ¶ 8.

The United States reviewed financial information submitted by Defendants to determine Defendants' ability to pay a civil penalty, and the amount and payment schedule reflect

3

Defendants' ability to pay as evaluated by a qualified financial expert. At the United States' request, Defendants supplied tax return information and responded to inquiries regarding corporate filings, real estate holdings, bank and brokerage accounts, shareholder meeting minutes, and other miscellaneous documents regarding assets and liabilities. The United States also accessed publicly available information, including investigative reports, financial data reports, and local real estate records, to assess Defendants' ability to pay a civil penalty in this matter. *See* CD, Appendix D.

### B. Injunctive Relief Requirements and Reporting

The proposed Decree addresses the CAA violations described in the Complaint by requiring the CAA Defendants to undertake remedial measures designed to ensure compliance with the CAA going forward. The CAA Defendants must implement the following measures under the Decree.

The proposed Decree prohibits acts that violate the CAA or that would facilitate illegal conduct under the Act. The Defendants agree not to:

(1) manufacture and sell products that bypass, defeat, or render inoperative any part of a vehicle's stock emission control system, mirroring the prohibition in Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7403(a)(3)(B);

(2) tamper with a vehicle's emission control system, which is illegal under Section 203(a)(3)(A), 42 U.S.C. § 7403(a)(3)(A);

(3) provide technical support for products that have already been sold in violation of the CAA, while notifying all authorized dealers that Defendants will no longer honor warranty claims or provide technical support and instructing such dealers to do the same; and

(4) transfer intellectual property that could be used to manufacture defeat devices.

CD ¶¶ 12, 14, 15, 17. The CAA Defendants are also required to permanently delete or destroy all violative products in inventory, CD ¶ 13, including those forfeited by employees and officers of the companies (as required by CD ¶ 21).

Defendants will also be required to submit semiannual reports to EPA until termination. These reports will explain how Defendants have complied with the penalty and injunctive relief terms. They will also describe any involvement of any Defendants with the automotive industry. This will give EPA the information it needs to ensure compliance. CD ¶ 28.

### C.     Effect of Settlement

The Consent Decree resolves all civil liability of Defendants with respect to the claims identified in the Complaint through the date of lodging of the Consent Decree. *See* Consent Decree at Section XII (Effect of Settlement/Reservation of Rights).  This Court retains jurisdiction to enforce the Consent Decree's terms and resolve disputes that may arise until its termination following completion of the injunctive relief. *Id.* at Section XVI (Retention of Jurisdiction).

### D.     Public Notification

The United States took steps to ensure that the settlement was made available to the public for comment.  First, the United States lodged the proposed decree with this Court on July 28, 2022.  The United States then published a notice in the Federal Register describing the decree and announcing a 30-day public comment period.  87 Fed. Reg. 48199 (Aug. 8, 2022). Meanwhile, the decree was available on the Department of Justice website.  No public comments were submitted to the Department of Justice.

### III.   ARGUMENT

**A.   Standard of Review**

When reviewing a proposed consent decree, the trial court is to review the settlement for fairness, reasonableness, and consistency with the statute. *See United States v. Union Elec. Co.*, 132 F.3d 422, 430 (8th Cir. 1997) (citing *United States v. Metro. St. Louis Sewer Dist.,* 952 F.2d 1040, 1044 (8th Cir. 1992)); *United States v. Delek Logistics Operating LLC*, No. :18-cv-1040, 2019 WL 5866073, at *2 (W.D. Ark. Nov. 8, 2019). The Eighth Circuit has stated that the judiciary's role in assessing the merits of a consent decree is "limited to the minimum necessary to protect the interests of the class and the public." *Little Rock Sch. Dist.*, 921 F.2d at 1388. This limited standard of review reflects a public policy that strongly favors settlements of disputes without litigation. *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) ("The law strongly favors settlements. Courts should hospitably receive them.").  Public policy and the law favor settlements because they conserve the resources of the courts, the litigants, and the taxpayers and "should...be upheld whenever equitable and policy considerations so permit." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976).

This is particularly true in disputes involving environmental violations "where voluntary compliance by the parties…will contribute significantly toward ultimate achievement of statutory goals." *Kelley v. Thomas Solvent Co.*, 717 F. Supp. 507, 516 (W.D. Mich. 1989) (citations omitted).  As the Eighth Circuit has noted, "where [an] agency's specialized knowledge is involved and Congress has vested the agency with discretion in a technical area, the court should grant broader deference and uphold the agency's conclusion if the conclusion is rationally based." *Lile v. Univ. of Iowa Hosps. and Clinics*, 886 F.2d 157,

160 (8th Cir. 1989) (citations omitted).

### B.  The Proposed Consent Decree Should Be Approved Because It Is Fair, Reasonable, and Consistent with the Public Interest

#### 1.  The Proposed Consent Decree Is Fair

The proposed Consent Decree is both procedurally and substantively fair. *See Akzo Coatings*, 949 F.2d at 1435. "Procedural fairness concerns the negotiations process, i.e., whether it was open and at arms-length." *See United States v. BP Expl. & Oil*, 167 F. Supp. 2d 1045, 1051 (N.D. Ind. 2001) (citing *Cannons Eng'g*, 899 F.2d at 86). "Substantive fairness concerns concepts of corrective justice and accountability." *Id*. Substantive fairness is related to procedural fairness, because "[t]o the extent that the process was fair and full of 'adversarial vigor,' the results come before the court with a much greater assurance of substantive fairness." *Cannons Eng'g*, 899 F.2d at 87 n.4 (citation omitted).

The settlement embodied in the Consent Decree is the result of a fair process of arms-length negotiations that were conducted in good-faith over a period of several years. Both parties had experienced legal representatives present throughout the negotiations who advocated their respective positions. The fact that "affected parties, themselves knowledgeable and represented by experienced lawyers, have hammered out an agreement at arm's length and advocate its embodiment in a judicial decree . . ." itself favors a finding that the Consent Decree is the result of a fair process. *See Cannons Eng'g*, 899 F.2d at 84.

This agreement is also substantively fair. Defendants will be held accountable for their alleged non-compliance. *See Cannons Eng'g*, 899 F.2d at 87 (explaining that "a party should bear the cost of the harm for which it is legally responsible"). The injunctive relief embodied in the Consent Decree will address Defendants' violations and prevent similar non-compliance in the future by prohibiting Flo~Pro and Thunder Diesel from manufacturing, selling, or

offering to sell defeat devices.  In addition, Defendants will pay a substantial civil penalty for their violations. These requirements assure that the Consent Decree satisfies the standards of accountability and corrective justice required for entry.

### 2. The Proposed Consent Decree Is Reasonable

In evaluating the reasonableness of an environmental consent decree, the most important part of that evaluation is the decree's effectiveness as a vehicle for cleansing the environment.  *United States v. Lexington-Fayette Urban Cnty. Gov't*, 591 F.3d 484, 489 (6th Cir. 2010).  Other factors include the decree's capacity to sufficiently compensate the public for the remedial cost and the relative strength of the parties' litigating positions, evaluated in light of the underlying consideration—the extent to which the decree serves the public interest. *See Akzo Coatings*, 949 F.2d at 1435-36 ("Protection of the public interest is the key consideration…"); *see also Cannons Eng'g*, 899 F.2d at 89-90.  In considering the strength of the parties' litigating positions, the court recognizes that litigation costs and time spent are significant factors, and a settlement in the environmental context is often a reasonable means to avoid expensive, protracted litigation.  *See Akzo Coatings*, 949 F.2d at 1435-36; *Cannons Eng'g*, 899 F.2d at 90.

This Consent Decree is reasonable because it satisfies the overarching goal of providing an effective vehicle for protecting the environment.  If entered, the Consent Decree would require Defendants to implement injunctive relief to remedy the alleged regulatory violations and maintain future environmental compliance. Moreover, the United States is recovering a significant civil penalty.

Entry of the Consent Decree serves the public interest by providing these environmental benefits more quickly and at less cost than could be achieved through

litigation. The only likely alternative to the Consent Decree would be protracted, complex litigation that would expend limited governmental and judicial resources. Moreover, it is not certain that the United States would obtain the same relief or penalties through such litigation. The Consent Decree reflects a reasonable compromise of the risks facing the United States if forced to litigate this matter and requires Defendants to take steps to ensure CAA compliance and prevent future excess emissions in a far shorter time than if litigation were to ensure. Accordingly, the Consent Decree is in the public interest and is a reasonable settlement. No comments were received during the public comment period to suggest otherwise.

### 3. The Proposed Consent Decree Is Consistent with the Public Interest

The Consent Decree also serves the public interest because it comports with the public health and environmental goals of the CAA. *BP Expl. & Oil*, 167 F. Supp. 2d at 1054 (explaining that the "most important factor as to public policy is whether the decree comports with the goals of Congress").

The injunctive relief required by the Consent Decree will prohibit Defendants from manufacturing, selling, and installing defeat devices. It therefore helps "protect and enhance the quality of the nation's air, so as to promote the public health and welfare and the productive capacity of its population"—the CAA's primary purpose. *See* 42 U.S.C § 7401(b)(1). Under the Consent Decree, Defendants will take action to comply with the CAA without litigation delays or costs. Additionally, the penalty Defendants will pay for their non-compliance will deter future CAA violations. In light of these reasons, the Consent Decree furthers the goals of the CAA and is in the public interest.

## CONCLUSION

The Consent Decree is fair, reasonable, appropriate, and consistent with the purposes of the CAA. The United States respectfully requests that the Court approve the Consent

Decree by **signing page 37** of the Consent Decree previously lodged with the Court (ECF No. 3-1) and enter it as a final judgment.

Dated: September 20, 2022                    Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

s/ *Samantha M. Ricci*
SAMANTHA M. RICCI
Trial Attorney
Cal. Bar 324517
Attorney for Plaintiff United States
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
(202) 514-3856
samantha.ricci@usdoj.gov

OF COUNSEL:

JOSH ZAHAROFF
Associate Regional Counsel
U.S. EPA, Region 5
77 W. Jackson Blvd.
Chicago, Illinois 60604

MATTHEW R. DAWSON
Associate Regional Counsel
U.S. EPA, Region 5
77 W. Jackson Blvd.
Chicago, Illinois 60604

MARK J. PALERMO
Attorney-Advisor
U.S. EPA Office of Enforcement and Compliance Assurance
1200 Pennsylvania Avenue NW
Washington, DC 20004